UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WAG ACQUISITION, LLC,

                              Plaintiff,

        v.

FLYING CROCODILE, INC. et al.,

                              Defendants.

No. 2:19-CV-1278-BJR

ORDER ON PENDING MOTIONS

This matter is before the Court on several pending motions. The Court, having reviewed the materials submitted by the parties in support of and in opposition to the pending motions, hereby ORDERS as follows:

(1)     Plaintiff's Motion to Amend Infringement Contentions (Dkt. No. 217) is GRANTED IN PART and DENIED IN PART. The Court GRANTS Plaintiff's unopposed request to amend its infringement contentions with respect to Defendants' use of the HTTP Live Streaming protocol ("HLS"). The Court DENIES the remainder of the motion.

(2)     Defendants' Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions (Dkt. No. 238, 239) is DENIED.

(3)     Plaintiff's Motion Challenging Bifurcation of Discovery (Dkt. No. 224) is GRANTED. The parties may engage in discovery related to damages for a period of four months following the date of this order.

(4)     The motions to seal (Dkt. Nos. 237, 251, and 257) are GRANTED IN PART and DENIED IN PART. The Court grants the motions to seal except for the redactions identified in

ORDER ON PENDING MOTIONS - 1

Appendix A to this Order. The parties are ORDERED to file corrected documents by July 16, 2021, that remove the redactions to documents as listed in Appendix A.

The reasons for the Court's decisions are set forth below.

## I. Background

### A. Overview of Plaintiff's Lawsuit

This case has a long and complicated history. Plaintiff WAG Acquisition, LLC filed this patent infringement action on April 25, 2014, in the U.S. District Court for the District of New Jersey. Plaintiff filed an amended complaint on August 4, 2014, which is the operative complaint in this matter. Plaintiff is a New Jersey limited liability corporation that operates under the trade name SurferNETWORK and provides Internet broadcasting services for live and on-demand audio and video program material.

Plaintiff's amended complaint identified seven named defendants and a number of "John Doe" defendants. By stipulation of the parties, only three Defendants now remain in this action, all based in Seattle: (1) Accretive Technology Group, Inc. (ATG); (2) ICF Technology, Inc. (ICF); and (3) Riser Apps LLC. Defendant ATG owns ICF and Riser Apps.

Plaintiff alleges that Defendants have infringed four of its patents, each of which relates to streaming media technology: (1) Patent No. 8,122,141 (the '141 patent); (2) Patent No. 8,185,611 (the '611 patent); (3) Patent No. 8,327,011 (the '011 patent); and (4) Patent No. 8,364,839 (the '839 patent).

### B. Actions in the District of New Jersey

On October 6, 2014, U.S. District Judge Esther Salas consolidated this case for discovery purposes with a number of other lawsuits that Plaintiff had filed in the District of New Jersey against other defendants alleging infringement of one or more of the same patents. On

September 10, 2015, Judge Salas denied a motion to dismiss filed by the defendants in the consolidated cases.

On September 29, 2016, U.S. Magistrate Judge Michael Hammer of the District of New Jersey granted a motion filed by the defendants in the consolidated cases to bifurcate liability and damages discovery. This order only concerned bifurcation of discovery related to liability and damages; it did not bifurcate liability and damages issues for trial.

Magistrate Judge Hammer set December 5, 2016, as the deadline for the parties in the consolidated cases to amend their pleadings. Liability discovery closed in the summer of 2017.

On May 24, 2017, Plaintiff and the defendants in the consolidated cases submitted a joint letter to Magistrate Judge Hammer regarding several issues, including: (1) a joint request by all defendants to amend their pleadings to assert inequitable conduct by Plaintiff; (2) a joint request by all defendants to amend their invalidity contentions; and (3) a request by Plaintiff to amend its infringement contentions in all of the consolidated cases. Magistrate Judge Hammer did not rule on these issues before this case was transferred to this Court in August 2019.

On July 28, 2017, the defendants in the consolidated cases filed a joint motion to dismiss or, in the alternative, to transfer venue. This motion was based on the U.S. Supreme Court's May 22, 2017 decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, __ U.S. __, 137 S. Ct. 1514 (2017), which concerned venue requirements in patent infringement cases. On September 26, 2017, the defendants sent a letter to Magistrate Judge Hammer indicating that they also had reason to believe that the Court lacked subject matter jurisdiction over the cases. After receiving this letter, Magistrate Judge Hammer terminated the pending motion to dismiss or transfer venue, and set a deadline for defendants to file a renewed motion that also addressed subject matter jurisdiction. The defendants filed such a motion on November 22, 2017.

On October 22, 2018, Magistrate Judge Hammer issued a Report and Recommendation on the motion to dismiss or transfer venue, which recommended: (1) the defendants' motion to dismiss for lack of subject matter jurisdiction or improper venue should be denied; and (2) the defendants' motion to transfer venue should be granted with respect to six of the seven consolidated cases, including this matter. On August 13, 2019, Judge Salas adopted the Report and Recommendation in full, and issued an order that transferred this case to the Western District of Washington.

Of the seven cases that Judge Salas had consolidated for discovery purposes in the District of New Jersey, all but one case was transferred to another judicial district. The one case that remained in the District of New Jersey was *WAG Acquisition, LLC v. Gattyán Group S.à.r.l.*, Civ. No. 14-2832 (D.N.J.).

**C.     Actions in this Court**

On March 19, 2020, this Court granted Defendants' motion to stay the case during the pendency of an *inter partes* review of several claims for one of the patents at issue. The Patent Trial and Appeal Board issued its decision on July 16, 2020. On August 6, 2020, this Court issued a scheduling order, which set a case schedule through the completion of claim construction briefing, which the parties completed in April. This Court has yet to set a date for a claim construction hearing.

The pending motions now before the Court are: (1) Plaintiff's Motion to Amend Infringement Contentions; (2) Defendants' Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions; and (3) Plaintiff's Motion Challenging Bifurcation of Damages Discovery. In their briefing on these motions, the parties have noted that similar motions were also filed in *WAG Acquisitions, LLC v. Gattyán Group S.à.r.l.*, Civ.

No. 14-2832 (D.N.J.) ("*Gattyán*"), the one case formerly consolidated with this case that remained in the District of New Jersey. In addition, the parties have filed three motions to seal materials that were submitted to Court in connection with Defendants' Motion to Amend. The Court considers these motions below.

## II. Discussion

### A. Plaintiff's Motion to Amend Infringement Contentions

Plaintiff has filed a motion to amend its infringement contentions. Dkt. No. 217. Plaintiff served its initial infringement contentions on Defendants on March 22, 2016, and served Defendants with its proposed amendments to its infringement contentions on October 14, 2020.[1]

In its opening brief, Plaintiff indicates that it seeks leave to amend its infringement contentions on two bases: (1) "Information learned late in liability fact discovery about a change made by Defendants after initial infringement contentions had been served . . . showing additional use of the systems accused of infringing two of the four patents in suit"; and (2) "Defendants' changes to two separate types of streaming systems that have occurred since the close of liability fact discovery." Dkt. No. 217 at 1.

Plaintiff's first proposed amendment to its infringement contentions concerns Defendants' expanded use during this litigation of "the same protocol that was already accused of infringement, the HTTP Live Streaming protocol," which the parties refer to as "HLS." *Id.* at

---

[1] Plaintiff's motion is not accompanied by a copy of either its original infringement contentions or its proposed amendments to its infringement contentions. Local Patent Rule 125 provides that infringement contentions should not be filed with the Court "unless they are the subject of a motion, in which case they may be attached as appropriate to the motion papers as necessary." Because Plaintiff has not submitted a copy of its proposed amendments with its motion, the Court relies on the parties' briefs and supporting materials to understand how Plaintiff is seeking to amend its infringement contentions.

5. Plaintiff contends that Defendants' alleged expanded use of HLS during this litigation infringes the '141 and '011 patents.

The second proposed amendment identified by Plaintiff in its opening brief concerns "new instrumentalities that Defendants added in 2019 and 2020" after the close of liability discovery. *Id.* at 6. Plaintiff's opening brief identifies the 2019 instrumentality as "Mediasoup/WebRTC," which it asserts is a new system that Defendants implemented in 2019 that infringes the '611 and '839 patents. *Id.* The 2020 instrumentality identified by Plaintiff again relates to Defendants' use of HLS. Dkt. No. 217 at 7.

In their response brief, Defendants indicate that they do not object to Plaintiff's proposed amendments to its infringement contentions with respect to HLS. In light of Defendants' non-opposition to this amendment, the Court grants Plaintiff's motion to the extent Plaintiff seeks to amend its infringement contentions with respect to HLS.

Defendants also argue in their response brief that any infringement contentions related to the Mediasoup/WebRTC system should be addressed in a new lawsuit, rather than this case. In its reply brief, Plaintiff indicates that it "agrees with Defendants," and "will exclude Mediasoup/WebRTC from this case." Dkt. No. 231 at 3.

Ordinarily, the agreement of the parties on the issues presented in Plaintiff's opening brief would resolve this motion. However, Plaintiff's reply brief adds a new request for leave to amend its infringement contentions to include contentions related to Defendants' use of an internally developed system called "MEOW," which is an acronym for "MP4 Egress Over Websocket." In its reply, Plaintiff asserts that it had mistakenly believed that "infringing traces it had collected came from a Mediasoup/WebRTC implementation on Defendants' streaming media servers," when in fact "the traces in the most recent infringement contentions was actually

another, an internally developed system that [Defendants] call MEOW." Dkt. No. 231 at 2. Plaintiff argues that its "amendment regarding the MEOW system should therefore remain in the case (and [be] identified as MEOW, rather than Mediasoup/WebRTC)." *Id.* at 2-3.

Defendants sought leave to file a surreply to Plaintiff's reply brief, which the Court granted. In their surreply, Defendants argue that Plaintiff's new arguments related to MEOW should be stricken because Plaintiff presented these arguments for the first time in its reply brief.

The Court agrees with Defendants that Plaintiff's request to amend its infringement contentions to include Defendants' use of MEOW should be denied. This Court need not consider arguments related to MEOW that Plaintiff first raised in its reply brief. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). But even putting that point aside, the Court denies Plaintiff's request because Plaintiff has failed to show diligence in seeking to amend its infringement contentions to include Defendants' use of MEOW.

The Western District of Washington has adopted Local Patent Rules, which are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *REC Software USA, Inc. v. Bamboo Solutions Corp.*, No. C11-0554JLR, 2012 WL 3527891, at *3 (W.D. Wash. Aug. 15, 2012) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12. (Fed. Cir. 2006)). These rules require the parties in patent infringement cases to provide early notice of their infringement and invalidity contentions, and "to proceed with diligence in amending those contentions when new information comes to light in the course of discovery." *REC Software*, 2012 WL 3527891, at *3 (quoting *O2 Micro*, 467 F.3d at 1366). Consistent with these purposes,

Local Patent Rule 124 provides that amendment of infringement contentions may be made "only by order of the Court upon a timely showing of good cause."

To determine good cause, the Court first examines the diligence of the moving party. *REC Software*, 2012 WL 3527891, at *3. "The party seeking to amend its contentions bears the burden of establishing diligence" and a "determination of whether good cause has been established is within the sound discretion of the trial court." *Id.* at *2. If diligence is found, the Court then considers whether the nonmoving party would be prejudiced by permitting the amendments. *Id.*

Defendants argue that Plaintiff has not met its burden of establishing diligence in seeking to amend its infringement contentions. Defendants assert that Plaintiff has been aware of their use of the MEOW protocol since a deposition conducted in June 2017. Plaintiff does not dispute this point; however, Plaintiff argues that Defendants failed to mention MEOW by name or reference in response to interrogatories from Plaintiff in 2017 regarding the streaming server software they used.

Notwithstanding Plaintiff's allegations of deficiencies in Defendants' interrogatory responses, the point remains that Plaintiff became aware of Defendants' use of MEOW by June 2017. By taking more than three years since then to seek to amend its infringement contentions to include Defendants' use of MEOW, Plaintiff has failed to meet its burden of establishing diligence. As a result, Plaintiff has not established good cause to amend its infringement contentions. Because Plaintiff has not established good cause, the Court need not consider the prejudice to Defendants if Plaintiff were permitted to amend its infringement contentions.

The Court's analysis is bolstered by the denial of a similar motion filed by Plaintiff in *Gattyán*, which is the one remaining case brought by Plaintiff in the District of New Jersey that

was formerly consolidated with this action. In that motion, Plaintiff sought to amend its infringement contentions to add an instrumentality that it learned of during discovery in 2017. Magistrate Judge Hammer found that it was "clear to the Court that WAG has not demonstrated diligence in moving to amend its infringement contentions, and therefore, cannot make a showing of good cause." Dkt. No. 227, Ex. 1 at 17. The order also found that the "barebones request" that Plaintiff made by letter to Magistrate Judge Hammer on May 24, 2017, to amend its infringement contentions was deficient and failed to alert the Court or the defendant as to what specifically Plaintiff sought to amend. *Id.* at 18. Magistrate Judge Hammer's order was affirmed by U.S. District Judge Kevin McNulty. *WAG Acquisition, LLC v. Gattyán Group S.à.r.l.*, No. 14-2832, 2020 WL 5105194 (D.N.J. Aug. 31, 2020).

Plaintiff argues that this ruling in the *Gattyán* case is incorrect. Plaintiff suggests that it was unable to seek to amend its infringement contentions to include MEOW earlier because it claims that this case was stayed in its entirety by Magistrate Judge Hammer pending a decision on the motion to dismiss or transfer venue filed by the defendants in the consolidated cases. As discussed above, the motion to dismiss or transfer venue was pending from 2017 until 2019. However, both Magistrate Judge Hammer and Judge McNulty squarely rejected that argument in *Gattyán*. Dkt. No. 227, Ex. 1 at 19 (Magistrate Judge Hammer states that the stay that he issued in the case applied only to *Markman* deadlines); Ex. 3 at 11 (Judge McNulty finds that "WAG's argument that it was powerless to act because Magistrate Judge Hammer had stayed the entire case is simply wrong. Judge Hammer did not stay all activity in the case, but expressly limited the stay to 'Markman issues.'").[2] In light of Magistrate Judge Hammer's role in supervising this

---

[2] Plaintiff also asserts that the *Gattyán* court incorrectly "stated that WAG did not serve a discovery request until January of 2017." Dkt. No. 217 at 5 n.3; *see also* Dkt. No. 231 at 5 (citing to page 17 of Magistrate Judge Hammer's decision). However, Magistrate Judge Hammer stated at page 17 of his decision that Plaintiff took "no *meaningful* fact discovery regarding its contentions in 2016," rather than saying that WAG did not serve *any*

case before it was transferred to this Court in August 2019, the Court gives substantial weight to his rejection of Plaintiff's argument that this case was stayed in its entirety while the motion to dismiss or transfer venue was pending between 2017 and 2019.

Therefore, the Court will grant Plaintiff's unopposed request to amend its infringement contentions with respect to Defendants' use of HLS, but will deny the remainder of Plaintiff's motion to amend its infringement contentions.

## B. Defendants' Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions

Defendants have filed a motion seeking leave to: (1) amend their answer to Plaintiff's amended complaint to add a defense of inequitable conduct; and (2) amend their invalidity contentions. Dkt. No. 238. Defendants acknowledge that the U.S. District Court for the District of New Jersey previously denied a similar motion filed by the defendant in the *Gattyán* case, who is represented by the same counsel as Defendants in this case. Indeed, the parties' briefing on this motion largely recycles their prior briefing on the same issue in *Gattyán*. *Compare* Dkt. Nos. 238, 252, and 258 in this matter to Dkt. Nos. 217-4, 217-18, and 217-22 in *Gattyán*. However, Defendants urge this Court to reach a different result.

### 1. Request to Amend Answer to Add an Inequitable Conduct Defense

Defendants' request to amend their answer to add a defense of inequitable conduct is based on their contentions that during the prosecution of the patents-in-suit, Plaintiff failed to disclose to the U.S. Patent and Trademark Office (USPTO): (1) that it derived the alleged inventions from a publicly available software known as "Icecast"; and (2) the existence of

---

discovery requests until 2017. Dkt. No. 227, Ex. 1 at 17 (emphasis added). To be sure, Judge McNulty's order affirming Magistrate Judge Hammer's decision did state that "WAG did not issue a single discovery request in 2016," which overlooks that Plaintiff served document requests in 2016. Dkt. No. 227, Ex. 3 at 11. However, the Court's ruling here does not turn on the extent to which Plaintiff conducted discovery in 2016.

another patent (Patent No. 5,822,524, which the parties refer to as "Chen." Defendants filed their answer to Plaintiff's amended complaint on November 2, 2015. Magistrate Judge Hammer set December 5, 2016, as the deadline for the parties to amend their pleadings in this case and in the other cases that were previously consolidated in the District of New Jersey. Defendants did not request leave to amend their answer before that deadline.

Instead, Defendants first requested leave to amend their answer to assert an inequitable conduct defense in the May 24, 2017 letter to Magistrate Judge Hammer, which was not ruled upon before this case was transferred to this Court. Because Defendants made their request to amend their answer after the December 5, 2016 deadline to amend pleadings, their request must not only satisfy the requirements of Federal Rule of Civil Procedure (FRCP) 15, which applies to motions to amend pleadings, but is also subject to the requirements of FRCP 16(b)(4), which applies to motions to amend a scheduling order.

Under FRCP 16(b)(4), Defendants must show good cause for the Court to amend a scheduling order. "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The focus of the inquiry is upon the moving party's reasons for seeking modification" of the case schedule, and "[i]f that party was not diligent, the inquiry should end." *Id.*

As noted above, the *Gattyán* court denied a largely identical motion to amend filed by the defendant in that case. Faced with similar arguments and evidence, Magistrate Judge Hammer concluded that the defendant in *Gattyán* "has not met its burden to demonstrate that it acted diligently in pursuing its affirmative defense of inequitable conduct, and therefore, has failed to

established good cause for the Court to amend its pretrial scheduling order to permit the untimely amendment." Dkt. No. 227, Ex. 1 at 13. This order was affirmed by Judge McNulty. *Gattyán*, 2020 WL 5105194, at \*2 - \*5. While this Court is not bound by the *Gattyán* court's ruling, the Court finds its reasoning persuasive and equally applicable to this case.

Like the defendant in *Gattyán*, Defendants here have done little to show diligence regarding their belated attempt to amend their answer to add an inequitable conduct defense related to Plaintiff's failure to disclose its use of Icecast to the USPTO. Defendants claim they "did not become aware of the relevance of Icecast or of its importance to their defenses to WAG's claims" until the deposition on February 24, 2017, of Skip Hansen, a third party who served as a technical adviser to Harold Price, the named inventor of the patents-in-suit. Dkt. No. 239 at 1. In *Gattyán*, Magistrate Judge Hammer found that this argument "falls flat." Dkt. No. 227, Ex. 1 at 9. The Court agrees.

Both here and in *Gattyán*, Plaintiff responded to this argument by noting that its first document production to Defendants on March 14, 2016, disclosed that Icecast was used as a model for its distribution server. Faced with identical facts, Magistrate Judge Hammer found that the defendant failed to act with diligence by waiting fourteen months after Plaintiff's use of Icecast was first disclosed to seek to amend its answer, a ruling that was affirmed by Judge McNulty.

The defendant in *Gattyán*, as well as Defendants here, maintain that they acted with diligence by: (1) arguing that it was necessary to conduct additional discovery before moving to add an inequitable conduct defense because this defense must be pled with particularity under FRCP 9(b); and (2) suggesting that they only learned of the relevance of Icecast after deposing

Skip Hansen in February 2017 and Jack Moffitt (an author of Icecast's source code) in April 2017, neither of whom was identified in Plaintiff's initial disclosures under FRCP 26.[3]

Judge McNulty rejected those arguments in *Gattyán*, finding that Plaintiff's disclosure in March 2016 of its use of Icecast as the model for its distribution server "should have raised a red flag" and motivated the defendant in that case "to immediately pursue discovery regarding a potential claim of inequitable conduct." Dkt. No. 227, Ex. 3 at 7. He noted that the defendant in *Gattyán* pointed to no affirmative steps that it took to investigate the inequitable conduct claim before the December 5, 2016 deadline to amend pleadings, nor did it point to any impediment to its pursuit of discovery related to Icecast before the February 2017 deposition of Mr. Hansen. Judge McNulty also noted that even if Plaintiff had been required under FRCP 26 to identify Mr. Hansen or Mr. Moffitt in its initial disclosures, its failure to do so would not excuse the defendant's failure to pursue discovery through other channels. *Id.* at 7. The Court agrees with Judge McNulty's well-reasoned analysis of these points, and similarly finds that Defendants here failed to show diligence in pursuing discovery related to Icecast or in moving to amend their answer to add an inequitable conduct defense related to Icecast.

Defendants also make little if any attempt to show they exercised diligence to amend their answer to assert an inequitable conduct defense concerning Plaintiff's failure to disclose the Chen prior art to the USPTO. Plaintiff argues that Defendants cannot demonstrate diligence with respect to its proposed amendments regarding the Chen prior art because Defendants obtained third-party discovery in June 2016 (nearly a year before they first sought to amend their answer) that disclosed Plaintiff's knowledge of the Chen prior art. Defendants offer no reason why they

---

[3] Plaintiff argues that it was not required under FRCP 26 to identify Mr. Hansen or Mr. Moffitt in its initial disclosures because it does not intend to rely on either person to support its claims or defenses.

waited nearly a year after obtaining this information to seek to amend their answer to include an inequitable conduct defense based on the Chen prior art. Faced with similar arguments in *Gattyán*, Magistrate Judge Hammer found that "without any explanation for its dilatory conduct, the Court must find that [the defendant] failed to move in a timely manner." Dkt. No. 227, Ex. 1 at 12. The same analysis holds true here.

Therefore, the Court denies Defendants' request for leave to amend their answer to add an inequitable conduct defense.[4]

### 2. Request to Amend Invalidity Contentions

Defendants also seek leave to amend their invalidity contentions to add Icecast as an additional prior art reference. Defendants served their original invalidity contentions on June 9, 2016. Defendants first sought to amend their invalidity contentions to include Icecast in the May 24, 2017 letter to Magistrate Judge Hammer, which was not ruled upon before this case was transferred to this Court. However, in the same order discussed above, Magistrate Judge Hammer subsequently denied this request by the defendant in *Gattyán*, a ruling that Judge McNulty affirmed.

Defendants' request to amend their invalidity contentions are subject to Local Patent Rule 124, the same rule that applies to Plaintiff's request to amend their infringement contentions. As discussed above, Local Patent Rule 124 provides that invalidity contentions may only be amended by order of the Court "upon a timely showing of good cause," a showing that requires the moving party to establish that it was diligent in seeking to amend its contentions. *REC*

---

[4] Because the Court denies Defendants' motion to amend its answer based on their lack of diligence, it is not necessary for the Court to reach Plaintiff's additional arguments that Defendants' motion to amend should be also be denied as futile.

*Software USA, Inc. v. Bamboo Solutions Corp.*, No. C11-0554JLR, 2012 WL 3527891, at *3 (W.D. Wash. Aug. 15, 2012).

The parties' arguments regarding Defendants' diligence in seeking to amend its invalidity contentions to add Icecast largely track their arguments regarding Defendants' diligence in moving to amend its answer. Faced with similar arguments, Magistrate Judge Hammer denied this request by the defendant in *Gattyán*, holding that "[t]he Court having already determined that [defendant] did not act with the requisite degree of diligence in moving to amend its answer under Rule 16 or Rule 15 to add an inequitable conduct affirmative defense based on Icecast, the Court similarly finds that [defendant] also has failed to establish diligence in moving to amend its invalidity contentions." Dkt. No. 227, Ex. 1 at 15. Judge McNulty affirmed this order. Dkt. No. 227, Ex. 3. The Court finds the same analysis and result should apply to Defendants' request here. As discussed above, Plaintiff's first document production in March 2016 disclosed its use of Icecast, yet Defendants did not seek leave to amend their invalidity contentions to include Icecast as a prior art reference until May 2017. This delay contradicts any assertion of diligence on Defendants' part.[5] Therefore, Defendants' request to amend their invalidity contentions to add Icecast as a prior art reference is denied.

## C. Plaintiff's Motion Challenging Bifurcation of Damages Discovery

Plaintiff has also moved to end the bifurcation of liability and damages discovery in this case. Dkt. No. 224. This bifurcation was originally ordered by Magistrate Judge Hammer on

---

[5] Defendants note that Local Patent Rule 124 provides a finding of good cause may be based on "recent discovery of material prior art despite earlier diligent search." However, as discussed above, Defendants had information disclosing Plaintiff's use of Icecast more than a year before they sought leave to amend their invalidity contentions to include Icecast as a prior art reference. As such, Defendants have not shown that their discovery of Icecast was a "recent discovery" despite an earlier diligent search.

ORDER ON PENDING MOTIONS - 15

September 29, 2016, with damages discovery to be stayed pending the completion of liability discovery and dispositive motions practice. As noted earlier, the bifurcation order only concerned bifurcation of discovery regarding liability and damages; it did not bifurcate liability and damages issues for trial.

Plaintiff notes that Magistrate Judge Hammer has granted a similar request to end the bifurcation of liability and damages discovery in *Gattyán*. Plaintiff argues that continuing the bifurcation of liability and damages discovery will result in additional delay of this case, and suggests that "allowing damages discovery could better allow for settlement of this long-running dispute." Dkt. No. 224 at 5. Plaintiff also argues that bifurcation of liability and damages discovery is not a typical practice in patent cases.

Defendants argue that Plaintiff's motion is untimely because it should have been brought as a motion for reconsideration shortly after Magistrate Judge Hammer issued the bifurcation order in 2016. They also suggest, without citation to authority, that Plaintiff at latest should have brought this motion within 14 days of when this case was transferred to this Court in 2019. Defendants also suggest that damages discovery will be narrower, more targeted, and less expensive if it occurs after claim construction and dispositive motions. Defendants dispute Plaintiff's contention that conducting damages discovery now will promote settlement. Defendants also argue that the issues in this case are complex, which should weigh toward continued bifurcation of discovery.

The Court finds persuasive the reasoning of Magistrate Judge Hammer in his decision to end the bifurcation of liability and damages discovery in *Gattyán*. Dkt. No. 249-1. Magistrate Judge Hammer indicated that "[t]he primary reason this Court chose to bifurcate liability and damages discovery [in 2016] was because there were many Defendants, and thus, damages

discovery was likely to be both voluminous and complicated." *Id*. at 4 n.4. He also found that "bifurcation will only cause additional delay in completing discovery and setting a trial date," and that "completing damages discovery now rather than building in additional delay is far more advisable." *Id*. at 5 n.4. Magistrate Judge Hammer also rejected arguments that Plaintiff's request to end the bifurcation should be denied as untimely, noting the broad authority of courts over the conduct of discovery and control of the docket, as well as the fact that the case was in a different procedural posture than when bifurcation was initially ordered in 2016. *Id*. at 4 n.4. Magistrate Judge Hammer's reasoning is equally applicable to this case, and is particularly persuasive because he is the judicial officer who originally ordered bifurcation of liability and damages discovery in this matter.

Therefore, Plaintiff's motion seeking to end the bifurcation of damages discovery is granted. The parties may conduct damages discovery for a period of four months from the date of today's order. By the end of that four-month time period, the Court anticipates that it will have held a hearing and issued an order on claim construction in this matter; as a result, conducting damages discovery over the next four months would help to ensure that this case can move forward more efficiently once a claim construction order is issued.

**D.    Motions to Seal**

The parties have filed three motions to seal materials that were filed in connection with Defendants' Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions ("Defendants' Motion to Amend"). *See* Dkt. Nos. 237, 251, 257. Each

motion concerns materials that Plaintiff seeks to maintain under seal. Defendants take no position on whether the motions to seal should be granted.

In evaluating a motion to seal, courts in the Ninth Circuit "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). Local Civil Rule 5(g)(3)(B) requires the party seeking to seal materials to provide a "specific statement of the applicable legal standard" for keeping a document under seal. Here, Plaintiff maintains that the "compelling reasons" standard applies to its request to seal records. Dkt. No. 250 at 2-3. The Court agrees.

Under this standard, the Court may only seal records if it finds a compelling reason to do so and articulates the factual basis for its ruling. *Foltz*, 331 F.3d at 1096-97. The Court must also conscientiously balance the competing interests of the public and the party who seeks to seal documents. *Id.* at 1097. "The factors relevant to a determination of whether the strong presumption of access is overcome include the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.'" *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (quoting *EEOC v. Erection Co., Inc.,* 900 F.2d 168, 170 (9th Cir.1990)). A "compelling reason" to seal includes situations where a court record may be used as a source of business information that might harm a litigant's competitive standing. *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

The motions to seal concern materials that Plaintiff designated as confidential pursuant to a Discovery Confidentiality Order entered by Magistrate Judge Hammer in March 2016, which this Court subsequently adopted. Dkt. No. 216 at 3 (adopting Dkt. No. 83). As the party seeking

to maintain these materials under seal, Plaintiff bears the burden of demonstrating that sealing is justified.  Local Civil Rule 5(g)(3)(B).

Plaintiff asserts that the information it seeks to maintain under seal contains sensitive and proprietary information, including confidential information about the nature of its business operations, and that its business would be injured by the public disclosure of such information.  Dkt. No. 250 at 3-4.  Plaintiff also argues that this information is not necessary for the public's understanding of the case.  In addition, Plaintiff points out that the *Gattyán* court granted a motion to seal the "same documents and information."[6]  *Id.* at 2.

In general, Plaintiff does not seek to seal documents entirely, but instead seeks to redact portions of documents to exclude information that Plaintiff argues should be maintained as confidential.  The two documents that Plaintiff seeks to seal entirely contain its source code (Dkt. No. 245, Exs. 16 and 25), and the Court finds there is a compelling reason to maintain those two documents entirely under seal in order to protect Plaintiff's trade secrets from disclosure.

The Court has reviewed the redactions made in the documents filed in connection with Defendants' Motion to Amend.  For the most part, the Court finds that the redactions sought by Plaintiff are justified by compelling reasons.  Except as discussed below, the redactions concern information about Plaintiff's internal operations, software development, and/or finances that appear to be confidential.  Plaintiff's competitive business standing could be harmed by the disclosure of such information, and the public's ability to understand the case does not depend on

---

[6] Plaintiff also asserts that its "[r]eliance on a protective order is further support for sealing the documents at issue," citing the Ninth Circuit's decision in *Foltz*.  Dkt. No. 250 at 4.  However, *Foltz* does not support this assertion by Plaintiff under the circumstances here.  Although the Discovery Confidential Order entered in this case allows the parties to designate materials produced or disclosed in discovery as confidential, Plaintiff cannot rely on this order to justify sealing materials it designated as confidential when such materials are filed with the Court.  Instead, Plaintiff must make the requisite showing that sealing is justified.  As in *Foltz*, Plaintiff may "not reasonably rely on the order to hold these records under seal forever."  *Foltz*, 331 F.3d at 1138.

the disclosure of such information. The Court's analysis is bolstered by the fact that Magistrate Judge Hammer granted a motion to permit similar redactions in connection with a nearly identical motion to amend filed by the defendant in *Gattyán*.

However, a substantial number of the redactions concern information that has already been publicly disclosed regarding Plaintiff's use of Icecast. In particular, the publicly-available versions of orders issued by Magistrate Judge Hammer and Judge McNulty on the defendant's motion to amend in *Gattyán* disclose allegations that Icecast was the "foundation" or "model" for the patents-in-suit. *See, e.g.*, Dkt. No. 227, Ex. 1 at 4-5 & 9, Ex. 3 at 2, 5, & 7. Indeed, these orders include a direct quote from a document produced by Plaintiff during discovery which stated that "[t]he ICECAST server is being used as a model of the Geode Distribution Server, though the production server is being written from scratch." Dkt No. 227, Ex. 1 at 9; *see also* Dkt. No. 227, Ex. 3 at 5 (similar). Nonetheless, Plaintiff repeatedly seeks to redact information regarding its use of Icecast as a "model" or "foundation" for its distribution server, even when such information has already been publicly disclosed in orders issued in *Gattyán*.

There is no basis for the Court to permit redaction of information that has already been publicly disclosed. "A request to seal information that was publicly disclosed involves 'an inherent logical dilemma' in that 'information that has already entered the public domain cannot in any meaningful way be later removed from the public domain.'" *Victory Sports & Entm't LLC v. Pedraza,* No. 2:19-cv-00826-APG-NJK, 2019 WL 2578767, at *2 (D. Nev. June 24, 2019); *see also* Dkt. No. 83 at 13 (providing that no information in the public domain shall be considered confidential pursuant to the Discovery Confidentiality Order entered in this case).

Therefore, the Court grants in part and denies in part the motions to seal. The Court grants the motions except as set forth in Appendix A to this Order. The Court finds that there are

not compelling reasons to permit the redactions set forth in Appendix A in light of prior public disclosures of information relating to Plaintiff's use of Icecast. The parties are directed to remove the redactions listed in Appendix A from the appropriate documents, and to file corrected versions of those documents by July 16, 2021.

### III.    Conclusion

For the foregoing reasons, the Court ORDERS that:

(1)    Plaintiff's Motion to Amend Infringement Contentions (Dkt. No. 217) is GRANTED IN PART and DENIED IN PART. The Court GRANTS Plaintiff's unopposed request to amend its infringement contentions with respect to Defendants' use of the HTTP Live Streaming protocol ("HLS"). The Court DENIES the remainder of the motion.

(2)    Defendants' Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions (Dkt. Nos. 238, 239) is DENIED.

(3)    Plaintiff's Motion Challenging Bifurcation of Discovery (Dkt. No. 224) is GRANTED. The parties may engage in discovery related to damages for a period of four months following the date of this order.

(4)    The motions to seal  (Dkt. Nos. 237, 251, and 257) are GRANTED IN PART and DENIED IN PART. The Court grants the motions to seal except for the redactions identified in Appendix A to this Order. The parties are ORDERED to file corrected documents by July 16, 2021, that remove the redactions to documents as identified in Appendix A.

Court staff will contact the parties' counsel shortly to discuss scheduling matters regarding a claim construction hearing in this matter.

DATED: July 2, 2021

Barbara Jacobs Rothstein
U.S. District Court Judge

**Appendix A**
**Redactions to be Removed from Materials**
**Filed in Connection With Defendants' Motion to Amend**

**Dkt. No. 238: Defendants' Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions**
- Remove the following redactions:
  - Page 1:  All redactions
  - Page 2:  All redactions
  - Page 5:  All redactions on lines 9-11 and the redaction of the sentence starting with "The result . . ." on line 14.
  - Page 6:  All redactions
  - Page 7:  All redactions
  - Page 10:  All redactions
  - Page 11:  All redactions
  - Page 12:  The redaction on lines 14-15 of the phrase "For example . . . to build Surfer Network."

**Dkt. No. 238-1:  Appendix 1 to Defendants' Motion to Amend**
- Remove all redactions on pages 4-5

**Dkt. No. 238-2:  Appendix 2 to Defendants' Motion to Amend**
- Remove all redactions on pages 3-4

**Dkt. No. 238-3:  Tab 1 (Proposed Amended Answer)**
- Remove the following redactions:
  - Page 23:  All redactions
  - Page 25:  All redactions in paragraphs 39-42
  - Page 26:  All redactions
  - Page 29:  Redactions on lines 2-3, through the words "written from scratch.'"
  - Page 34:  All redactions in paragraphs 69 and 70.
  - Page 35:  All redactions
  - Page 38:  All redactions
  - Page 39:  All redactions

**Dkt. No. 240:  Exhibits Filed in Support of Defendants' Motion to Amend**
- Exhibit A1:  Remove the following redactions:
  - Page 234:  All redactions
  - Page 235:  All redactions
  - Page 238:  All redactions
  - Page 302:  All redactions
  - Page 619:  All redactions

**Dkt. No. 241:  Exhibits Filed in Support of Defendants' Motion to Amend**
- Exhibit A9:  Remove the following redactions:

ORDER ON PENDING MOTIONS - 23

o Page 65: Redaction of first full sentence on page and redaction of last two lines on page.
o Page 66: All redactions
o Page 67: All redactions
o Page 130: Redactions on lines 14-15
o Page 131: All redactions

**Dkt. No. 242: Exhibits Filed in Support of Defendants' Motion to Amend**
- Remove the following redactions:
  - Exhibit A15
    - Page 6: Redaction of the phrase "In designing . . . was used"
  - Exhibit A21
    - Page 1: Redaction of the title ("Geode Architecture Definition") and the first sentence of page 1 ("This document . . . of the Geode Surfer Network.")
    - Page 9: Redaction of the final sentence on the page ("The ICECAST server . . . being written from scratch.")
  - Exhibit A22
    - Page 4: Redaction of the sentence starting with the words "The use of Icecast . . ."

**Dkt. No. 243: Exhibits Filed in Support of Defendants' Motion to Amend**
- Remove the following redactions:
  - Exhibit A26:
    - Page 172: Redactions on lines 11-17 and on lines 21-24 through the words "being written from scratch.'"
    - Page 173: Redaction of sentence on lines 7-8 ("And so he . . . as a model").
  - Exhibit A32:
    - Page 127: All redactions

**Dkt. No. 252: Plaintiff's Opposition to Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions**
- Remove the following redactions:
  - Page 2: All redactions
  - Page 3: Redactions on lines 1-2, through "WAG00000010, 12, 14."
  - Page 4: All redactions
  - Page 5: All redactions
  - Page 6: All redactions
  - Page 15: The redaction in footnote 2
  - Page 18: All redactions
  - Page 19: All redactions

**Dkt. No. 253-3: Exhibit Filed in Support of Plaintiff's Opposition to Motion to Amend**
- Remove the following redactions from Exhibit C:

ORDER ON PENDING MOTIONS - 24

- Page 1:  Redaction of the title ("Geode Architecture Definition") and the first sentence of page 1 ("This document . . . of the Geode Surfer Network.")
- Page 9:  Redaction of the final sentence on the page ("The ICECAST server . . . being written from scratch.")

**Dkt. No. 258:  Reply in Support of Defendants' Motion to Amend Pleading to Add an Inequitable Conduct Defense and to Amend Invalidity Contentions**

- Remove the following redactions:
  - Page 2:  All redactions
  - Page 3:  All redactions
  - Page 5:  All redactions
  - Page 8:  The redaction on lines 19-20 (the redactions on the last line of the page may remain)
  - Page 9:  All redactions, except the redaction on line 1
  - Page 11:  All redactions