The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WAG ACQUISITION, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> FLYING CROCODILE, INC., d/b/a FCI, INC., et al. <br><br> Defendants. | Case No. 2:19-cv-01278-BJR <br><br> SECOND NOTICE OF SUPPLEMENTAL AUTHORITY RELATED TO DEFENDANTS' MOTION TO STAY |

Pursuant to Local Civil Rule 7(n), Defendants Accretive Technology Group, Inc., ICF Technology Group Inc., and Riser Apps LLC ("Defendants") write to inform the Court that on December 10, 2021, FriendFinder Networks Inc. and Streamray Inc. filed a Petition under 37 C.F.R. 1.515(c) and 1.181 for Review of Examiner's Decision Denying *Ex Parte* Reexamination of U.S. Patent No. 8,185,611 with the United States Patent and Trademark Office ("USPTO").

This supplemental authority is offered in support of Defendants' Motion to Stay. Dkt. 274. A copy of the supplemental authority is attached hereto as Exhibit A.

Dated: December 15, 2021          Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

*/s/ Warren J. Rheaume*
Warren J. Rheaume, WSBA No. 13627
Benjamin J. Byer, WSBA No. 38206
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610

SECOND NOTICE OF SUPPLEMENTAL AUTHORITY RELATED TO DEFENDANTS' MOTION TO STAY (2:19-cv-01278-BJR) - 1
4891-1849-4982v.1 0115439-000001

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(206) 622-3150 Phone
(207) 757-7700 Fax
Email: warrenrheaume@dwt.com
Email: benbyer@dwt.com

Kevin M. O'Brien (*Pro Hac Vice*)
Richard V. Wells (*Pro Hac Vice*)
James S. Blank (*Pro Hac Vice*)
Christine M. Streatfeild (*Pro Hac Vice*)
Shima S. Roy (*Pro Hac Vice*)
Ellen Cheong (*Pro Hac Vice*)
BAKER & MCKENZIE LLP
815 Connecticut Ave NW
Washington, DC 20006
(202) 452-7032 Phone
Email: kevin.obrien@bakermckenzie.com
Email: richard.wells@bakermckenzie.com
Email: james.blank@bakermckenzie.com
Email: christine.streatfeild@bakermckenzie.com
Email: shima.roy@bakermckenzie.com

*Attorneys for Defendants Accretive Technology Group, Inc.; ICF Technology Group Inc.; and Riser Apps LLC*

SECOND NOTICE OF SUPPLEMENTAL AUTHORITY
RELATED TO DEFENDANTS' MOTION TO
STAY (2:19-cv-01278-BJR) - 2
4891-1849-4982v.1 0115439-000001

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| *In re* reexamination of:<br>Price<br>U.S. Patent No. 8,185,611<br>Filing Date: May 10, 2010<br>Issue Date: May 22, 2012<br>Application No.: 12/800,177<br>Inventor: Harold Edward Price<br>Title: STREAMING MEDIA DELIVERY SYSTEM | Reexamination Control No.: 90/014,835<br>Confirmation No. 9923<br>Art Unit: 3992<br>Examiner: Christopher E. Lee |

Mail Stop "*Ex Parte* Reexam"
ATTN: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### PETITION UNDER 37 C.F.R. §§ 1.515(c) AND 1.181 FOR REVIEW OF EXAMINER'S DECISION DENYING *EX PARTE* REEXAMINATION

Dear Sir:

Third-Party Requesters FriendFinder Networks Inc. and Streamray Inc. ("Requesters") petition the Director for review of the "Decision Denying *Ex Parte* Reexamination" mailed on November 12, 2021, (the "Order"), in which the United States Patent and Trademark Office (the "Office") refused reexamination of claims 1, 3, 8, 9, 14, and 15 of U.S. Patent No. 8,185,611 ("the '611 Patent").

The prior art identified by the Requesters in their August 25, 2021 Request for *Ex Parte* Reexamination of the '611 Patent (the "Request") raise substantial new questions of patentability of the challenged claims. The Examiner denied the Request on finding that the prior art references fail to teach a single limitation — namely, "the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's

1

computer," referred to in the Request as claim limitation l[g], 3[h], 8[i], 9[j], 14[g], and 15[h], and hereafter the "Same Rate" limitation. *See* Request at 23.

This decision is based on several errors, any one of which would be grounds for reversal under the Director's *de novo* review.

*First*, the Examiner adopted an unsupported construction of the Same Rate limitation. The Examiner construed the Same Rate limitation as "a sending rate out of the server corresponds to the constant rate at which said media data elements are transferred into the server buffer at any given time during uninterrupted transmission of said media data elements," pointing to a single sentence in the specification that merely parrots the claim language. The Examiner also failed to justify the insertion of "at any given time" to the construction. Compounding these legal errors, the Examiner disregarded the proposed construction of the Same Rate limitation in the Request[1]— the same construction advanced by the Patent Owner in seeking to enforce the '611 Patent in litigation—and the accompanying evidence from the claim language and the specification. In sum, the Examiner only considered an isolated citation parroting the claim language while disregarding the intrinsic evidence advanced by the Patent Owner under *Phillips* on the same '611 Patent and same claims. Under this construction, there are substantial new questions of patentability raised by the prior art cited in the Request.

*Second*, even if the Examiner's construction is adopted, the Order fails to credit Requesters' evidence from the prior art references that teach the Same Rate limitation under that construction. For instance, the Examiner disregarded Requesters' express evidence identifying the relevant rates, in favor of unknown rates not defined by the Examiner.

Accordingly, Requesters respectfully submit that substantial new questions of the patentability of the challenged claims are raised in the Request, and that the Director should order reexamination.

I.   **PERTINENT FACTS**
- The '611 Patent to Harold Edward Price issued on May 22, 2012, and is putatively assigned to WAG Acquisitions, LLC (the "Patent Owner.")[2]

---

[1] Requesters proposed to construe the Same Rate limitation as the playback rate, which was derived from the evidence advanced by Patent Owner. Request, at 23-24. Requesters note that they propose this construction of the Same Rate limitation for the purposes of this reexamination only.

[2] Requesters do not concede that WAG is in fact the proper owner of the '611 Patent.

2

- The Patent Owner is currently asserting the '611 Patent in the Northern District of California (*WAG Acquisition, L.L.C. v. FriendFinder Networks Inc., et al.*, No. 3:19-cv-05036-JD) and in the Western District of Washington (*WAG Acquisition, L.L.C. v. Flying Crocodile, Inc. et al.*, No. 2:19-cv-01278-BJR).

- In seeking to enforce the '611 Patent, the Patent Owner has taken affirmative positions on the scope of the '611 Patent claims asserted in federal district court and for which reexamination is sought in the Request. *See* Request, at Exs. 13-16.[3]

- On August 25, 2021, the Requesters filed a request for *ex parte* reexamination of claims 1, 3, 8, 9, 14, and 15 of the '611 Patent. The Request was assigned Control Number 90/014,835.

- A "Decision Denying *Ex Parte* Reexamination" was mailed on November 12, 2021, refusing reexamination of the challenged claims.[4]

## II. POINTS TO BE REVIEWED

A. Whether the Examiner's claim construction of the Same Rate limitation—relying on a single sentence from the specification and improperly disregarding Requesters' evidence—was erroneous.

B. Whether, under the Requesters' proposed claim construction, the prior art cited in the Request raise substantial new questions of patentability.

C. Whether, even under the Examiner's claim construction, the prior art cited in the Request that explicitly teach matching rates during steady-state conditions (as allegedly recited in the challenged claims) raise substantial new questions of patentability.

## III. LEGAL STANDARD

### A. Director's *De Novo* Review

The Director reviews *de novo* the Examiner's determination that a substantial new question of patentability has not been raised. MPEP § 2248.

*Ex parte* reexamination should be ordered when "the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important

---

[3] The Exhibits cited in this Petition are those filed with the Request.
[4] Separately, the Office has ordered reexaminations on all challenged claims of three related patents, denoted as 90/014,833 (U.S. Patent No. 8,327,011); 90/014,834 (U.S. Patent No. 8,122,141); and 90/014,836 (U.S. Patent No. 8,364,839).

3

in deciding whether or not the claim is patentable" and that the same question has not been previously decided, *i.e.*, that the question of patentability is "new."  37 CFR § 1.525; MPEP § 2242.  As such, "[i]t is not necessary that a 'prima facie' case of unpatentability exist as to the claim in order for 'a substantial new question of patentability' to be present as to the claim. Thus, 'a substantial new question of patentability' as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications."  MPEP § 2242.

### B.  Claim Construction

Because the '611 Patent has expired, the claims are given their "ordinary and customary meaning" and construed according to the principles set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005); Request, at 21-22 (citing standard). Under *Phillips*, the analysis begins on the most important consideration: the language of the claims.  *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1355 (Fed. Cir. 2014) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention.") (internal quotation and alteration omitted).

## IV.  ARGUMENT

### A.  The Examiner's Construction of the Same Rate Limitation Is Unsupported

The Examiner construed the Same Rate limitation ("the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer") as "a sending rate out of the server corresponds to the constant rate at which said media data elements are transferred into the server buffer at any given time during uninterrupted transmission of said media data elements." Order at 7.  The Examiner fails to support this construction with sufficient intrinsic evidence under *Phillips*.

The Examiner based this construction on a single sentence in the specification, one which merely restates the claim language: "In this steady state condition, the media data is sent at a rate that matches the constant fill rate of the server buffer, and is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer (with some variation in the case of VBR content)." '611 Patent (Ex. 1), at 7:65-8:4; Order at 7. The Examiner provides no additional evidence. Despite this citation merely

parroting the claim language, the Examiner also inserted "at any given time" into the construction without any explanation. This is further insufficient under *Phillips*.

Equally problematic, the Examiner summarily disregarded Requesters' proposed construction of the Same Rate limitation as the playback rate, which was derived from the evidence advanced by Patent Owner on the same '611 Patent. Order at 8; Request, at 23-24. The Examiner did so in reliance on two irrelevant cases because they involve the Office applying the broadest reasonable interpretation standard for interpreting claim terms during prosecution of a patent application and courts applying a different claim construction standard. Order, at 6; *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989) ("During patent examination the pending claims must be interpreted as broadly as their terms reasonably allow."); *In re Morris*, 127 F.3d 1048, 1053-54 (Fed. Cir. 1997); MPEP § 2111 ("broadest reasonable interpretation"). But, in this *ex parte* reexamination ***the Office and courts both apply the same claim construction standard, Phillips,*** for an expired patent and thus it was improper for the Office to reject Requesters' evidence. Order, at 6 ("Office does not interpret claims when examining patent applications in the same manner as the courts.") (internal citations omitted); Request, at 21-22 (citing cases).

The evidence included, as Patent Owner noted, that the "playback rate" is "directly present in the language of the claims themselves and interrelates with the sending and receiving rates in the instant clause." Request at 24; Request Ex. 14 at 10. For instance, claim 1 recites that the system will "play back the streaming media at a playback rate for viewing or listening by said at least one user" and separately recites "sending further streaming media data elements to the user system ***at about the playback rate***, and wherein the media data elements is sent at a rate that matches the constant fill rate of a server buffer, and is received at the same rate by the user computer…" '611 Patent (Ex. 1) at claim 1 (emphasis added); *see* Request Ex. 14 at 10. While statements made by the Patent Owner in litigation are not considered at the determination phase,[5] the Office should still consider the intrinsic evidence cited in the Request and advanced by Patent Owner under *Phillips* in construing the same '611 Patent and same claims under *Phillips*. In addition to the claim language, the Patent Owner also points to language in the specification supporting the construction that these rates match the playback rate: "[t]he audio or video data is delivered from the source ***at the rate it is to be played out***." '611 Patent (Ex. 1), at 2:41-43 (emphasis added); *see* Request Ex. 14 at 11.

---

[5] *See* 35 U.S.C. §§ 301(a) and (d); 37 CFR § 1.515(a).

Accordingly, Requesters respectfully submit that for the purposes of this reexamination the Same Rate limitation be construed, as understood by the Patent Owner based on the claim language itself, to simply mean the playback rate.

### B. Under the Requesters' Proposed Same Rate Construction, the Request Raises Substantial New Questions of Patentability

Under the proposed construction of the Same Rate limitation as the playback rate, the references in the Request raise a substantial new question of patentability, such as Chen/Chen FH, Nguyen-058, Nguyen-413, and Vahalia. Each teach streaming media using a fixed or constant playback rate.

For instance, Chen/Chen FH describe during NORMAL mode transmitting and receiving data at a playback rate, *e.g.*, 30 frames per second:

> This invention times the transmission of multimedia files according to a fixed rate, generally the frame rate during normal transmission. For example, if the client machine can display 30 frames per second, the server will transmit a frame of compressed video starting at each 1/30th second, regardless of the complexity of the video frame. The client machine needs to store in its memory only one, or a few, frames as new frames are transmitted to it at a regular rate (frame rate).

Chen (Ex. 2), at 4:33-41; Chen File History (Ex. 3), at ChenFH086 ("Normal mode: transmit data according to time and player's playout rate."); Request, at 41.

The data must be loaded into the server buffer at the playback rate because Chen could not transmit and play at the playback rate in NORMAL mode "most of the time" as required unless the data was loaded at the same playback rate in the server buffer. Chen (Ex. 2), at 6:32-36 ("In this mode the server (1) paces its transmission so that the data for a single video frame is transmitted in the time of a single video frame (normally 1/30 second) …."); Request, at 42.

Chen even describes a scheduler at the server to ensure that this playback rate timing of 30 frames per second is met. Chen (Ex. 2), at 4:10-13 ("the present invention uses the timing information in the index file to (i) ensure transmission of a video frame in a frame time under normal circumstances, *e.g.*, 30 frames per second. . . ."); 9:21-30 ("The transmission scheduler (13) drives the data flow. Its main tasks include reading data out of the storage subsystem (12), packetization, and packet transmission. It maintains the stream buffer (18) which stores data awaiting transmission. To avoid overloading the network and/or the client agent's receiving buffer, the transmission scheduler (13) properly schedules the data execution path, by considering the

6

timing specification in the multimedia files and the timing requirements of the applications."); Request, at 42.

Both Nguyen references similarly teach a system where the rates into and out of the server buffer and received by the user are all equal to the playback rate. Nguyen-058 teaches that the media should be sent and received (played) at a "fixed frame rate" of, *e.g.*, 25 frames per second for video:

> The server 310 preferably includes a transmit buffer 314, that is also known as transmitting means 314. Buffer 314 is for buffering data received from a source, and for transmitting to the network 150 at the regular rate, such as at a fixed frame rate r required by the streaming media in question. The frame rate r may be, for example, 100 frames per second for all audio, or 25 frames per second for video. The streaming media may have a constant or a variable transmission rate.

Nguyen-058 (Ex. 9), 3:23-29; claim 10 ("The server of claim 7 [1] [see Certificate of Correction] where the transmit buffer sends the frames to the network at a fixed frame rate "); Request at 92.

Separately, Nguyen-413 teaches the Same Rate limitation because it transmits and receives (plays) data at a fixed playback or frame rate (*e.g.*, 25 frames per second) when there are no interruptions. "Transmission through the regular path 312 is intended to be at the regular rate, such as at a fixed frame rate r required by the streaming media in question. The frame rate r may be, for example, 100 frames per second for all audio, or 25 frames per second for video. The streaming media may have a constant or a variable transmission rate." Nguyen-413 (Ex. 20), at 3:20-26; 1:46-49 ("the client 160 includes a fixed size de-jitter receive buffer 162. The buffer 162 first fills up to its size, and then starts playing out. While playing out, the buffer 162 is emptied at the same rate as it is filled."); 4:65-67 ("[t]he regular rate is intended to be the normal frame rate of the streaming media."); *see also* Abstract ("Then transmission is switched to the regular rate, from the regular buffer."); 2:22-27 ("Then transmission is switched to the regular rate."); 1:20-21 ("A fundamental requirement for streaming media is that it has to be played at a constant rate"); Request at 73.

Likewise, Vahalia describes that the server buffer fill rate, server transmission rate, and client receive rate all equal the playback rate. Vahalia (Ex. 10), at 14:13-18 ("video file server operating in steady state. The steady state operation the video file server consists of servicing n streams at the rate of $R_i$ bytes/second for each stream (i.e., $R_1$ is the ith stream's playback rate)"); 14:18-26 ("The rate at which the network buffer is emptied needs to be equal to the rate at which

7

the disk buffer is filled up; the goal is that both rates are the same as the stream's playback rate. When the network buffer is empty, the disk buffer is full. At that moment the buffers interchange their roles."); Request, at 100.

Accordingly, under Requesters' proposed construction, the Request raises substantial new questions of patentability.[6]

### C. Even Under the Examiner's Same Rate Construction, the Request Raises Substantial New Questions of Patentability

Several prior art references (*e.g.*, Nguyen-413, Vahalia, Nguyen-058, Bhat) expressly teach the Same Rate limitation under the Examiner's construction and thus raise a substantial likelihood that a reasonable examiner would consider them important. The Examiner here though disregarded such explicit rates in favor of speculating that the challenged claims require different (unknown) rates. This is improper because it fails to address Requesters' evidence and instead, imposes unsupported and heighten requirements for the Same Rate limitation.

#### 1. Nguyen-413

Nguyen-413 expressly teaches in the specification the Same Rate limitation. The Examiner apparently agrees that Nguyen-413 teaches the client receiving and playing data at the same rate (Order, at 10) and agrees Nguyen-413 teaches a transmit rate (*id.*, at 11), but contends this is not the same constant rate to fill the server buffer. Order, at 10-11. This is incorrect.

Nguyen-413 teaches that, "the client 160 includes a fixed size de-jitter receive buffer 162. . . . ***While playing out, the buffer 162 is emptied at the same rate as it is filled***." Nguyen-413 (Ex. 20), 1:46-49 (emphasis added); Request, at 73. Nguyen-413 further describes that the server transmits at that constant or fixed "playing out" rate termed the regular rate. Nguyen-413 (Ex. 20), at Abstract ("Then transmission is switched to the regular rate, from the regular buffer"); 4:63-67 ("According to a box 490, the second portion is transmitted to the network through the regular path. . . . The regular rate is intended to be the normal frame rate of the streaming media."); 3:20-22 ("Transmission through the regular path 312 is intended to be at the regular rate, such as at a fixed frame rate r"); Request, at 73. Thus, the evidence demonstrates that in Nguyen-413, the client receives at the regular or constant frame rate and server transmits at that same constant frame rate — precisely what is required by the Examiner's construction.

---

[6] The evidence discussed in Section C for the prior art references is equally applicable here. *See* pages below 8-12.

Nguyen-413 further describes loading the server buffer at that same regular or constant frame rate. Nguyen-413 teaches that a "server comprising": "a *regular path* for transmitting data received from a *source* at a *regular rate*; a *first buffer in* the *regular path* for *buffering data* from the *source prior to transmission to the client*." Nguyen-413 (Ex. 20), at claim 1 (emphasis added); Request, at 74. Hence, the first or server buffer loads data from the source at that regular or constant frame rate. Other evidence in Nguyen-413 reinforces this view that the server buffer loads data through the regular path from the source at that constant frame or regular rate. Nguyen-413 (Ex. 20), at claim 7 ("the regular path for transmitting data received from the source over the network at the regular rate"); 3:17-26 ("Preferably, the *transmit buffer 314 is located in the regular path 312, for buffering data from the source*. Transmission *through the regular path 312 is intended to be at the regular rate*, such as at a *fixed frame rate r* required by the streaming media in question.") (emphasis added); 1:20-21 ("A fundamental requirement for streaming media is that it has to be played at a constant rate"); Request, at 73-74. Thus, Nguyen-413 teaches that the server fills at a rate that is equal to the constant (fixed) frame rate.

At all stages—client receiving, server transmitting, and server buffer loading—Nguyen-413 employs the same constant frame or regular rate. *See also* Request, at 64-65 (outlining with citations that Nguyen-413 provides the same solution as alleged in the '611 Patent). Accordingly, a reasonable examiner would find Nguyen-058's same rates important to the Same Rate limitation and thus Nguyen-413 raises a substantial new question of patentability.

### 2. Vahalia

Vahalia also teaches the Same Rate limitation by virtue of its steady state condition, the same condition the Examiner relied on for his Same Rate construction. Order, at 7 (citing '611 Patent (Ex. 1), at 7:65-8:4). Vahalia teaches "an integrated cached disk array storage subsystem and a plurality of stream server computers linking the cached disk storage subsystem to a data network for the transfer of video data streams." Vahalia (Ex. 10), at Abstract; Request, at 99-100.

Vahalia describes that while in steady state the server buffer fill rate, transmission rate, and playback rate all are the same. Specifically, Vahalia teaches, "It is convenient to describe the disk scheduling and admission control for access to storage devices by viewing the *video file server* operating in *steady state*. The *steady state operation* the video file *server* consists of *servicing n streams* at the *rate* of $R_i$ *bytes/second* for *each stream* (i.e., *$R_1$ is the ith stream's playback rate*)." Vahalia (Ex. 10), at 14:13-18 (emphasis added); Request, at 100. This describes that the server is

9

in steady state and during this steady state, the server transmits to clients at the same rate of $R_i$ bytes/second, which is the client's playback rate. As such, the server transmits and the client receives at the same playback rate. To conclude otherwise would mean that the term "stream's playback rate" taught in Vahalia has no meaning.

Vahalia further teaches that during steady state, the server buffer (network buffer or disk buffer) loads data at that same constant playback rate ($R_i$ bytes/second):

> For each stream the video file server maintains two buffers: a disk buffer and a network buffer. In *steady state*, a network task empties the network buffer and a disk task fills up the disk buffer. The two operations are performed in parallel. The *rate at which the network buffer is emptied needs to be equal to the rate at which the disk buffer is filled up*; the goal is that *both rates are the same as the stream's playback rate*. When the network buffer is empty, the disk buffer is full. *At that moment the buffers interchange their roles*.

Vahalia (Ex. 10), at 14:18-26 (emphasis added); Request, at 100. In sum, Vahalia describes a steady state condition in which the server buffer fill rate, server transmission rate, and client receive rate all equal the playback rate. Accordingly, Vahalia raises a substantial new question of patentability.

### 3. Nguyen-058

Likewise, Nguyen-058 also describes that same steady state condition as relied on by the Examiner for the Same Rate construction. *Compare* '611 Patent (Ex. 1), at 7:65-8:4 (Order, at 7), *with* Nguyen-058 (Ex. 9), at 4:49-65; 3:23-29. Nevertheless, the Examiner contends that the challenged claims require different rates than those taught in Nguyen-058. Order, at 12-13. This is incorrect, because Nguyen teaches that a transmit buffer 314 is filled from a source at a rate that is equal to the media playout rate, which is the same playout rate at which data is sent by the server and received by the client.

Nguyen-058 describes in steady state that the server transmits and the client receives at the same playout (playback) rate, "assuming no prior interruptions":

> The performance of the invention can be now appreciated with reference to FIG. 5. . . . A dashed line 530 represents the instantaneous rate of receiving *data through the network 150 in client 360*. In FIG. 2, the line 530 starts at a value fy, which is the *steady state, assuming no prior interruptions* in the transmission. *The value fy is again the streaming media play out rate, which is how fast the data stream is being transmitted from the server 310.*

10

Nguyen-058 (Ex. 9), at 4:49-65 (emphasis added); 1:66-2:4 ("In FIG. 2, the line 230 starts at a value fy, which is the steady state, assuming no prior interruptions in the transmission. The value fy is also the streaming media play out rate."); Request, at 93. This steady state in Nguyen-058—where the server transmits and the client receives at the same playout rate—reads precisely on the Same Rate limitation, including "wherein the media data elements is sent at a rate…[and] is received at the same rate by the user computer if there are no interruptions in the transmission of media data between the server and the user's computer."

The server buffer (transmit buffer) also loads data from the source at this same playout or constant rate (*e.g.*, 25 frames per second).

> The **server 310** preferably includes a **transmit buffer 314, that is also known as transmitting means 314. Buffer 314 is for buffering data received from a source, and for transmitting to the network 150 at the regular rate, such as at a fixed frame rate r** required by the streaming media in question. The frame rate r may be, for example, 100 frames per second for all audio, or 25 frames per second for video. The streaming media may have a constant or a variable transmission rate.

Nguyen-058 (Ex. 9), at 3:23-29 (emphasis added); claim 10 ("The server of claim 7 [1] [see Certificate of Correction] where the transmit buffer sends the frames to the network at a fixed frame rate."); Request, at 92. Thus, the server buffer fills at the same constant playout rate.

Nguyen-058 even provides a figure below outlining the foregoing, where the server and client are in steady state according to the horizontal lines with a constant playout (regular) rate:



FIG.5

11

Nguyen-413 (Ex. 20), at Fig. 5 (annotations added); Request, at 93. Such horizontal lines above clearly show that the rate is constant from the server to the client. The server and client in Nguyen-058 would not be in steady state unless the server's buffer was filling at the same rate it is transmitting. Stated another way, adopting the Examiner's view would read out Nguyen-058's express steady-state teaching—disclosed in both the written description and figures—and undermine the Examiner's own claim construction, which is entirely dependent on an alleged steady-state condition.

Accordingly, a reasonable examiner would find Nguyen-058's teaching of the same rates important to the patentability of the '611 Patent and Nguyen-058 thus raises a substantial new question of patentability.

### 4. Bhat

The Examiner with limited explanation contends the Bhat fails to teach the Same Rate limitation. Order, at 21. But, Bhat describes that the server buffer loading rate, server transmitting rate, and client receiving rate all equal.

Bhat is directed to a double-buffering method (server buffer and client buffer) for transmitting streaming media. Bhat (Ex. 11), at Abstract; Request, at 138. Bhat further teaches that the system "must be capable of *reading the right data* from the disk subsystem over the bus complex *into server buffer* at least *at the same rate as that needed* by the *respective clients*." Bhat (Ex. 11), at 8:62-64 (emphasis added); Request, at 139. Thus, Bhat describes loading the server buffer at the same rate as the rate needed by each client.

Bhat further teaches that the server transmits at this client-needed rate and the client receives at that same rate. Bhat (Ex. 11), at 8:46-50 ("An application requirement is that the system including the *server and the network should simultaneously feed all active clients with data at the rate the clients need so that no client starves and no data overflow occurs in any buffer within the entire system*.") (emphasis added); Request, at 139. Such transmitting and receiving at the same rate ensure "no data overflow occurs in any buffer within the entire system." *Id*.

Accordingly, Bhat teaches the Same Rate limitation and raises a substantial new question of patentability.

### V. CONCLUSION AND ACTION REQUESTED

Requesters have demonstrated that the Examiner's refusal to order reexamination of claims 1, 3, 8, 9, 14, and 15 of the '611 Patent is in error. The Requesters respectfully request that the

Office order reexamination of the '611 Patent because the Request raises substantial new questions of patentability.

This Petition is timely filed under 37 C.F.R. § 1.515(c).  Please charge any necessary fee or credit any overpayment pursuant to 37 C.F.R § 1.20(c)(1)(ii)(6) to our Deposit Account No. 22-0261.

Respectfully submitted,

Dated: December 10, 2021               By: /Frank Gasparo/

Frank M. Gasparo (Reg. No. 44,700)
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
T 212-370-6273
F 212-307-5598
fmgasparo@Venable.com

Attorney for Requesters

13

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused a true and correct copy of the foregoing **PETITION UNDER 37 C.F.R. §§ 1.515(c) AND 1.181 FOR REVIEW OF EXAMINER'S DECISION DENYING *EX PARTE* REEXAMINATION** to be served via Federal Express Overnight on the following correspondence address of record for U.S. Patent. No. 8,185,611:

Ernest D. Buff<br>
Ernest D. Buff & Associates, LLC<br>
231 Somerville Road<br>
Bedminster NJ 07921

Dated: December 10, 2021                         By: /Frank Gasparo/

Frank M. Gasparo (Reg. No. 44,700)
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
T 212-370-6273
F 212-307-5598
fmgasparo@Venable.com

Attorney for Requesters

14